**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JIMMY MURPHY, : | |
| : | CIVIL ACTION NO. 1:09-2261 |
| Plaintiff : | |
| : | (CONNER, D.J.) |
| v. : | (MANNION, M.J.) |
| : | |
| MIFFLIN COUNTY REGIONAL : | |
| POLICE DEPT., CPL. ROBERT L. | |
| HAINES, JR., LT. STEVE : | |
| KNUDSON, PTLM. ETTINGER, and | |
| CHIEF WILLIAM HERKERT, JR., : | |
| : | |
| Defendants : | |

**REPORT AND RECOMMENDATION[1]**

The plaintiff, Jimmy Murphy, currently an inmate at the Federal Correctional Institute in Cumberland, Pennsylvania, filed the instant 42 U.S.C.A. §1983 civil rights action against the Mifflin County Regional Police Department, Cpl. Robert L. Haines, Jr. ("Haines"), Lt. Steve Knudson ("Knudson"), Ptlm. Ettinger ("Ettinger") and Chief William Herkert, Jr. ("Herkert"). The plaintiff alleges false arrest and unreasonable search and seizure by the defendants. Pending before the court is a motion for summary judgment filed by the plaintiff on October 27, 2011. (Doc. No. 103). A statement of material facts, (Doc. No. 105), and supporting brief, (Doc. No. 104), were filed the same day. The defendants filed a counter-statement of material facts (Doc. No. 110) and a brief

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

in opposition to the motion for summary judgment (Doc. No. 111) on December 1, 2011. A reply brief was filed by the plaintiff on December 20, 2011. (Doc. No. 112).

## I. FACTUAL BACKGROUND[2]

On or about January 10, 2008, Mifflin County police officers Haines and Ettinger[3] were dispatched to investigate illegal drug activity at the bus terminal in Lewistown, Pennsylvania. The plaintiff and Reginald Calvin Watson, Jr. ("Watson") were questioned by Haines at the bus terminal. Ettinger arrived a short time later. The plaintiff and Watson were asked by Haines where they were from and where they were going. They responded that they were going to Huntingdon, Pennsylvania and were waiting for friends to pick them up. Haines asked the plaintiff and Watson for identification. Haines and Ettinger asked if they could search the plaintiff and Watson, however both of them refused to consent. Haines asked the plaintiff if he could search his backpack to which he

---

[2] Plaintiff filed a "Concise Statement of Material Facts" on October 27, 2011. (Doc. No. 105). Many of Plaintiff's statement of facts do not contain citations to the record to support the statements as required by Local Rule 56.1. While Plaintiff does cite to "Supplemental Affidavits" to support the statements, these affidavits do not appear to be part of the record on the docket. Defendants filed a counter-statement of facts in which they admitted or denied plaintiff's statements and cited to the record. (Doc. No. 110).

[3] At time time of the incident, Defendants Herkert and Knudson, members of the Mifflin County Regional Police Department, were the supervisors of Haines and Ettinger, but were not directly involved in the events of January 10, 2008.

also refused. The plaintiff was then transported to the Mifflin County Regional Police Department to wait for the state police canine unit where he was held for less than one hour. At the police department, the plaintiff consented to the search of his backpack and was released after no contraband items were found. On July 14, 2009, Haines testified in an unrelated criminal trial against plaintiff for drug charges.

## II.   PROCEDURAL HISTORY

The plaintiff filed a complaint on November 17, 2009. (Doc. No. 1). Thereafter, on March 4, 2010, the plaintiff filed an amended complaint. (Doc. No. 11). On June 25, 2010, the defendants filed a motion to dismiss the plaintiff's amended complaint. (Doc. No. 23). On January 7, 2011, the court recommended the plaintiff's claim for equitable relief and his Fourteenth Amendment racial profiling claim be dismissed. (Doc. No. 51). On March 9, 2011, the District Court adopted the report and recommendation. (Doc. No. 60). On April 25, 2011, the defendant Mifflin County Regional Police Department filed a motion for summary judgment. (Doc. No. 68). On September 14, 2011, the District Court adopted the report and recommendation and directed the Clerk of Court to enter judgment in favor of the Mifflin County Regional Police Department and against the plaintiff. (Doc. No. 96).

On October 27, 2011, the plaintiff filed the motion for summary judgment presently before the court. (Doc. No. 103). A statement of material facts, (Doc.

3

No. 105), and supporting brief, (Doc. No. 104), were filed the same day. The defendants filed a counter-statement of material facts (Doc. No. 110) and a brief in opposition to the motion for summary judgment (Doc. No. 111) on December 1, 2011. A reply brief was filed by the plaintiff on December 20, 2011. (Doc. No. 112).

### III.   STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its

4

motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

In his motion for summary judgment, the plaintiff Jimmy Murphy argues that he is entitled to summary judgment as a matter of law because the defendants falsely arrested plaintiff and conducted an illegal search and seizure of the plaintiff and his property. (Doc. No. 104).

**IV.   ANALYSIS**

5

**A. Personal involvement of Defendants Herkert and Knudson**

The defendants Herkert and Knudson were the supervising officers of the defendants Haines and Ettinger. The plaintiff does not put forth any allegations of their personal involvement in the events of January 10, 2008 in his amended complaint or his supporting documents to his motion for summary judgment. To state a claim under 42 U.S.C.A. §1983, the plaintiff must show that the defendant, acting under color of federal law, deprived him of a right secured by the Constitution or laws of the United States. See Brown v. Philip Morris, 250 F.3d 789, 800 (2001). Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. See C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir.2005); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir.1997), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) and by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753-54 (1998) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009). Moreover, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondent superior." Iqbal, 556 U.S. at 676.

Here, the plaintiff has not alleged any personal involvement on the part of

6

Herkert and Knudson other than that they were the supervising officers of the defendants Haines and Ettinger. The plaintiff did not put forth any evidence that they were even aware of the events of January 10, 2008.  Moreover, Herkert and Knudson cannot be held vicariously liable for the alleged unconstitutional acts of Haines and Ettinger under a theory of respondeat superior. Paratt v. Taylor, 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 1913 n. 3, 68 L.Ed.2d 420 (1981). As such, it is recommended that the plaintiff's motion for summary judgment regarding claims against Herkert and Knudson be denied.

### B. The Defendants Haines and Ettinger

The defendants contend that the evidence they have put forth shows there are genuine issues of material fact which prohibit the entry of summary judgment on the Plaintiff's Fourth Amendment claim. The Fourth Amendment guarantees the right of the people to be free from unreasonable search and seizure. U.S. Const. Amend 4.  The Fourth Amendment does not prohibit all searches, the prohibition exists only for searches deemed to be unreasonable. Elkins v. United States, 364 U.S. 206, 222 (1960).  The determination of whether a search is unreasonable depends on the facts surrounding the search and seizure. Skinner v. Railway Labor Executives Ass'n, 489 U.S. 602, 619 (1989).

The plaintiff argues that summary judgment should be granted in his favor for his Fourth Amendment unreasonable search and seizure claim against Haines and Ettinger because he was never charged with a criminal offense as

7

a result of his detention and arrest, illegal drugs were never found on the plaintiff and he did not consent to accompany the arresting officer to the police station. (Doc. No. 104, p.2). The plaintiff further alleges that Haines and Ettinger lacked probable cause or reasonable articulable suspicion to justify taking him into custody. (Id.).

In the defendants' counter-statement of material facts, the defendants assert that at 12:58 p.m., on January 10, 2008, Haines and Mifflin County District Attorney Stephen Snook ("Snook") observed the plaintiff and Watson exit the bus terminal and proceed to a nearby street. (Doc. No. 110, p. 2). Haines and Snook communicated about the plaintiff and Watson and they assert that based on their experience with the Mifflin County Drug Task Force and its detection of drug traffic arriving in the bus terminal, they determined they should speak to the plaintiff and Watson. (Id.). Ettinger asked the plaintiff and Watson where they were from and where they were going. (Id.). The plaintiff and Watson said they were waiting to be picked up by two female friends, whose names they could not remember, to go to Huntingdon, Pennsylvania. (Id.). Haines knew that the bus they exited would have taken them to Huntingdon which was approximately twenty-six (26) miles away. The plaintiff disputes this. (Id. at pp. 2, 6). Haines asked the plaintiff and Watson for identification, which they provided. (Id.). Haines knew that the plaintiff's hometown of Baltimore is known to be a significant source of illegal drugs. (Id. at p. 3). It was further determined that Watson had a outstanding warrant for his arrest. (Id.).

8

Instead of two women as described by the plaintiff, two men, Todd Willoughby ("Willoughby") and Shawn Stevenson ("Stevenson"), arrived to pick up the plaintiff and Watson. (Id.). These two individuals were recognized by Haines and the state police officers from past incidents and their involvement in the drug trade. (Id.). It was also determined that Stevenson was subject to an outstanding warrant. (Id.). Stevenson and Watson were taken into custody based on the outstanding warrants. The state police troopers elicited from Willoughby and Stevenson that two women named Becky and Stacey asked them to pick up Murphy and Watson. (Id.). The two women, Becky and Stacey, were known by the state police to be involved in the illegal drug trade. (Id.).

The plaintiff contends that defendants detained the plaintiff and seized his person which rose to the level of false arrest. (Doc. No. 104, p. 2). The defendants dispute that the plaintiff and Watson were detained at the bus terminal. (Doc. No. 111, p. 4). At the bus terminal, the defendants questioned the Plaintiff and Watson and the record is void of evidence that they refused to answer the questions or asked if they could leave. The Constitution does not prohibit a person from being questioned on the street by the police and unless there are special circumstances, the person can refuse to cooperate and leave. Terry v. Ohio, 392, U.S. 1, 34 (1968).

A police officer can conduct a brief investigatory stop when the officer has reasonable articulable suspicion that criminal activity is occurring. (Id. at p. 27). Reasonable suspicion is:

9

> ..."a particularized and objective basis for suspecting the person stopped of criminal activity" viewed from the perspective of an objectively reasonable law enforcement official. Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (citations and quotations omitted). The reasonable suspicion inquiry involves probabilities not certainties. See United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); United States v. Valentine, 232 F.3d 350, 359 (3d Cir.2000) (remarking that reasonable suspicion may be "based on acts capable of innocent explanation"). In assessing whether a police officer had reasonable suspicion to detain an individual for investigatory purposes, courts must consider the "totality of the circumstances, in light of the officer's experience." Givan, 320 F.3d at 458 (noting that the Supreme Court has "accorded great deference to the officer's knowledge of the nature and the nuances of the type of criminal activity that he had observed in his experience"). To satisfy the Fourth Amendment, the officer must articulate "some minimal objective justification for an investigatory" beyond an inchoate hunch. Id.(citing United States v. Sokolow, 490 U.S. 1, 13, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).

U.S. v. Fraguela-Casanova, 2012 WL 832981*4 (M.D. Pa. March 12, 2012).

The defendants argue that there was reasonable suspicion of criminal activity to investigate the plaintiff further and ask to search his backpack based on their experiences with the Mifflin County Drug Task Force. (Doc. No. 110, p. 3). It is undisputed that the circumstances transformed into an investigative detention. The defendants argue that: 1) based upon the inconsistencies in the plaintiff's statements; 2) the decision of Watson and the plaintiff to exit the bus terminal twenty-six (26) miles before their destination; 3) their inability to name the female friends that were picking them up; 4) the known drug individuals who

10

came to pick up Watson and the plaintiff; 4) the outstanding warrants for Watson and Stevenson; 5) the information supplied regarding Becky and Stacey, and 6) all of the information before them, the defendants suspected that the plaintiff may be involved in illegal drug activity. (Doc. No. 110, pp. 3-4).

Both the plaintiff and the defendants agree that the plaintiff did not consent to the search of his backpack at the bus station. (Id.). Haines asked the plaintiff for consent to search his backpack and the plaintiff agreed and then withdrew his consent. (Id. at p. 4). Because Haines suspected the plaintiff was involved in illegal drug activity, he arranged for the state police canine handler to investigate the plaintiff's backpack. (Id. at p. 5). The plaintiff was transported to the Mifflin County Regional Police Department to wait for the state police canine handler. (Id.). While waiting for the state police, the plaintiff consented to the search of his backpack and Haines found razors, plastic baggies with the corners torn off, and multiple bottles of deodorant with the caps off. Haines knew from experience that these items were indicative of drug delivery. However, no drugs were found and the plaintiff was immediately released. (Id.). The entire encounter between Haines and the plaintiff was less than one hour and the plaintiff left with his property when he was released. (Id.). The plaintiff disputes that the defendants had probable cause or reasonable articulable suspicion to detain him.

If an officer's observations lead him/her to conclude that a person traveling may be carrying drugs, the principles of *Terry* permit the officer to detain the

11

person's bag briefly in order to investigate the circumstances surrounding the suspicion, provided that it is limited in scope. United States v. Place, 462 U.S. 696, 706 (1983). Drug related investigatory detentions for a canine sniff have been held to be permissible. United States v. Quintero, 38 F.3d 1317 (3d Cir. 1994). The court looks to the length of the detention in order to determine if the stop can be assessed as an investigatory stop and if the police diligently pursued the means of investigation to confirm or deny their suspicions. United States v. Sharpe, 470 U.S. 675, 686 (1985).

The Third Circuit has held that a person's Fourth Amendment rights were not implicated until the person's bag was detained in order for the police dog to sniff it for narcotics. United States v. Frost, 999 F.2d 737, 740 (3d Cir. 1993). The Third Circuit found that the detectives were diligent despite the fact that because it was in the evening it would take an hour for the canine unit to get to the airport. Id. at 742. The court reasoned that the canine unit was called as soon as the defendant did not consent to the search and the officers exhibited diligence in dealing with the defendant and the situation. Id.

The defendants contend that the evidence they have put forth shows there are genuine issues of material fact which prohibit the entry of summary judgment on the Plaintiff's Fourth Amendment claim. The court agrees that there appear to be unresolved factual issues which are fatal to the plaintiff's motion for summary judgment. The defendants have set forth disputed issues of material fact concerning their reasons for detaining the plaintiff and asking for

12

a canine sniff of the backpack. The party moving for summary judgment, in this case the plaintiff, bears the burden of showing the absence of the genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The defendants have further put forth the statement of Haines who denies any intentional wrongdoing in his investigation of possible drug activity at the bus terminal. (Doc. No. 110, Ex. B). The statement and supporting information provided by the defendants raises material factual issues regarding whether the plaintiff was unreasonably stopped and detained by Haines and Ettinger which must be resolved at trial.

## V.    RECOMMENDATION

On the basis of the foregoing, **IT IS RECOMMENDED THAT** the plaintiff's motion for summary judgment **(Doc. No. 103)**, be **DENIED**, and the matter be set down for trial at the convenience of the district judge.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** August 2, 2012

O:\shared\REPORTS\2009 Reports\09-2261-04.wpd